NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 9, 2013[*]
Decided May 13, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 12-3538

| | |
|---|---|
| ALFRED L. STONE, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 11-cv-57 |
| GREGORY A. BALLARD, et al., | |
| *Defendants-Appellees.* | Sarah Evans Barker, *Judge*. |

**O R D E R**

Alfred Stone appeals the district court's grant of summary judgment against him in this employment discrimination suit as well as the court's denial of his motion to reconsider

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

that decision. Because Stone has not identified evidence from which a jury could find that race or age motivated the decision not to hire him, we affirm the judgment.

In 2009 the City of Indianapolis posted a job listing for a building inspector. The City sought someone who could become certified as an inspector of three types of building systems—electrical, mechanical, and plumbing— in two years for residential buildings and four for commercial structures. The job required some knowledge of construction terminology (or equivalent education), construction trades, and personal computers. The City preferred candidates with knowledge of its building codes and ordinances, effective communications skills, and two years of construction or related work experience.

In his application for the position, Stone stated that he was certified as a residential and commercial inspector in one of the three listed systems, plumbing. He had about two years' experience inspecting plumbing and mechanical systems, nearly twenty years' experience in one trade, plumbing, and he had owned a plumbing company. He reported "some college" education and acknowledged a past substance-abuse problem and several misdemeanor arrests in the 1970s.

From a pool of 92 applicants, 79 were deemed qualified, including Stone. The City's construction services supervisor, Scott Mason, selected three candidates from this group of 79 to interview. One of these interviewees was David O'Hare. O'Hare had graduated from college with a bachelor's degree in Public Management. He had worked with the City over the previous two years, including in its Office of Code Compliance. There, he learned its day-to-day operations and some ordinance provisions. He was also recommended by a member of the mayor's cabinet. Stone, who is black and 59 years old, was not selected for an interview. Mason does not recall why he had passed over Stone's application, but he observed that many qualified applicants were not selected for interviews. The record does not disclose whether Mason knew Stone's race, although he could have inferred Stone's age from his résumé, which listed work experience dating back to 1973.

After the interviews, Mason hired O'Hare. Mason recalls that he hired O'Hare based on his understanding of technology, knowledge of local government, his past successful work for the City, his communication skills, and high motivation. Mason added that O'Hare's strong academic background in college also demonstrated an ability to study and pass exams. O'Hare is white and is about 27 years old.

Stone accused Mason of race and age discrimination. He invoked 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34. In addition to Mason, he named as defendants the director and deputy director of the Division of Code Enforcement

for Indianapolis's Department of Metropolitan Development, the mayor of Indianapolis, and the City of Indianapolis Department of Metropolitan Development, all of whom he alleged had maintained a policy of hiring young, white candidates.

The district court granted summary judgment in favor of the defendants. The court first ruled that Stone could not prevail on his § 1983 claims against the mayor and the director and deputy director because none of them was responsible for the hiring decision. The court also granted summary judgment to all of the individual defendants on Stone's Title VII and ADEA claims, observing that only employers can be liable under either statute. As for Stone's claims against the City, the court first determined that Stone had established a prima facie case of discrimination under Title VII and the ADEA. But although the court "share[d] Stone's concerns" with Mason's inability to remember why he had not selected Stone for an interview, it concluded that Stone had failed to identify evidence suggesting that Mason's proffered reasons for hiring O'Hare were a pretext for discrimination. Because it found no evidence of discrimination, the court also granted summary judgment for Mason on Stone's § 1983 claim. Stone moved for reconsideration, maintaining that he was more qualified than O'Hare and that Mason had therefore failed to present a nondiscriminatory reason for rejecting his application. Construing the motion under Federal Rule of Civil Procedure 59(e), the court denied it because Stone had identified no newly discovered evidence or errors of law or fact.

On appeal Stone first maintains that the defendants did not overcome his prima facie case for discrimination because Mason "failed or refused" to give a legitimate, nondiscriminatory reason for rejecting Stone's application. But Stone's focus on Mason's failure to recall why he passed over Stone's application is misguided. We have never held that to avoid summary judgment on a discrimination claim an employer must recall why it passed over each unsuccessful job applicant—in this case, 91 other people. Rather, once a plaintiff has made out a prima facie case (which we will assume here), the employer need only offer a legitimate reason for its hiring selection. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008) (employer's legitimate, nondiscriminatory reason for selecting successful candidate shifted burden to plaintiff to show that reason was pretextual). The City articulated several legitimate reasons for selecting O'Hare: Mason valued his academic record, which reflected a promise for passing the necessary certifications, his technology and communication skills, his motivation, his familiarity with local government, and the approval of his recent work for the City, including in its Office of Code Compliance.

Given that the City offered race- and age-neutral reasons for hiring O'Hare, the burden shifted to Stone to furnish evidence that those reasons were pretextual. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006) (to survive summary judgment plaintiff "had to present some evidence that [employer's] stated reasons for hiring

[successful candidates] were lies"). Relying on *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180–81 (7th Cir. 2002), Stone argues that pretext may be inferred from his evidence that he was so "clearly better qualified" than O'Hare that no reasonable person would have hired O'Hare and therefore Mason lied about his reasons for hiring O'Hare. But Stone's evidence does not show that he is "clearly better qualified." *Id.* Putting the two candidates side by side, a reasonable person could prefer O'Hare's completed college education, knowledge of government, technology and communication skills, and past work inside the City's Office of Code Compliance to Stone's admittedly substantial experience in one construction trade and his plumbing-inspector certification. We will not second-guess this reasonable judgment. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1059–60 (7th Cir. 2006).

Finally Stone argues that the district court ran afoul of the Federal Rules of Evidence in two respects. First, he faults the district court for suggesting that Mason may have legitimately relied on Stone's arrest record in preferring O'Hare. The rules of evidence prohibit a court from using criminal history to attack a witness's character for truthfulness, *see* FED. R. EVID. 609(a); they do not limit how an employer may use that history. Stone also argues that statements from anyone who recommended O'Hare were inadmissible as hearsay, but he is incorrect. The defendants offered them not as substantive proof that O'Hare was well qualified but to explain why Mason elected to interview him, which is a permissible use. *See* FED. R. EVID. 801(c)(2); *Smith v. Wilson,* 705 F.3d 674, 679 (7th Cir. 2013) (noting that secondhand statements are admissible to explain defendant's actions).

We have considered Stone's remaining arguments but they do not merit further discussion.

AFFIRMED